GARY T. MAZZONE, Plaintiff-Appellant, v. CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Defendant-Appellee.

First District (6th Division)   No. 1—91—0156

Opinion filed February 7, 1992.—Rehearing denied March 18, 1992.

Raymond P. Concannon and Michael P. Concannon, both of Raymond P. Concannon, Ltd., of Chicago, for appellant.

Ronald J. Cuchna, Richard A. Haydu, and George T. Brugess, all of Chicago and North Western Transportation Company, of Chicago, for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Gary T. Mazzone, appeals from an order granting summary judgment in favor of the defendant, Chicago & North Western Transportation Company. The complaint alleged that on August 20, 1984, the plaintiff was driving his motorcycle westbound on the Eisenhower Expressway near 2540 West in the City of Chicago. As he passed under a railroad bridge he was struck with an object thrown from the overpass by an unknown person. The defendant owned and controlled the west side of the bridge at that location; the east side was owned by Conrail. The plaintiff was struck at 1:30 a.m. when traveling under the west side of the bridge. The complaint further alleged that on the date the plaintiff was injured and "for a long time prior thereto, defendant knew or in the exercise of ordinary care should have known of persons throwing rocks, stones and other objects from its overpasses onto motor vehicles proceeding on the Eisenhower Expressway." The principal allegation of negligence is that the defendant failed to "install screen or shield over its overpass to prevent foreign objects from being thrown onto traffic below." The issue before us, as it is in virtually all summary judgment appeals, is whether a question of material fact exists. The trial judge concluded that there was no question of material fact; and we agree.

■■ Generally, there is no duty to protect one against the criminal attacks of a third person. (*Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 306 N.E.2d 39.) A duty does not arise unless there are sufficient facts to put the defendant on notice that an intervening criminal act is likely to occur. (*Moore v. Yearwood* (1960), 24 Ill. App. 2d 248, 164 N.E.2d 215.) In short, the existence of a legal duty requires that the occurrence be reasonably foreseeable. (*Cross v. Chicago Housing Authority* (1979), 74 Ill. App. 3d 921, 393 N.E.2d 580.) In determining whether a legal duty exists, the likelihood of injury, the magnitude of the burden of guarding against it, and the consequence of placing that burden on the defendant must also be taken into account. *Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535.

The defendant first filed a motion to dismiss alleging that the complaint failed to state a cause of action. The plaintiff's response pointed out that the motion to dismiss admitted "the persons *were* throwing rocks and other objects off of *its* overpass onto motorists below and that for some time prior thereto, it further knew of this happening and yet it did nothing. Defendant's argument that it had no duty to do anything to prevent this from happening therefore cannot be based upon lack of foreseeability." (Emphasis added.) The

plaintiff concluded by citing with approval *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617, as support of his claim that the defendant could foresee what subsequently happened and that the defendant "knew that vandals *were* using *its* bridge to throw rocks upon the motorists below." (Emphasis added.) The judge denied the motion to dismiss.

After discovery, the defendant filed its motion for summary judgment and emphasized the absence of proof of actual knowledge of any incidents during which objects were thrown from the bridge in question upon traffic traveling on the expressway. The deposition of the defendant's assistant vice-president established that there had never been "any incidents of people dropping objects off any bridge that the [defendant] owns in the State of Illinois." It was also established that the defendant had had no notice of any incidents involving objects dropped from bridges in its entire 11-State system.

In the plaintiff's response, he abandoned any claim of actual notice, although he did not amend his pleadings. He argued that the defendant had constructive notice "that vandals *were* using its bridge to throw rocks upon the motorists below." (Emphasis added.) The plaintiff also argued that constructive notice of other events should have alerted the defendant to the fact that protective screening should have been placed on the bridge in question. In support of its argument the plaintiff introduced the following:

(1) A police report dated August 20, 1984, and accident reports dated August 20, 1984. The reports reflected the plaintiff's accident and those of five other vehicles which were struck by objects thrown from the same overpass at or about the same time.

(2) A book entitled "A Guide for Protective Screening of Overpass Structures" (Guide) prepared by the Committee on Planning and Design Policies of the American Association of State Highway Officials, dated December 1, 1968. The Guide was prepared "to assist *** in determining the need for a protective screen on overpass structures with suggested screening methods." It pointed out that in the period of 1964 to 1965 there were over 1,200 reported incidents of objects being dropped or thrown from overpasses onto vehicles below in the Chicago area. A more recent study covering a period of July 1968 to March 1969 disclosed that 357 incidents were reported. The guide also provided that screens should be considered "[o]n an overpass near a school, a playground or elsewhere where it would be expected that the overpass would be frequently used by children unaccompanied by adults."

(3) A City of Chicago police report dated May 29, 1983, of an accident on the Eisenhower Expressway with personal injuries from an object dropped from an overpass at 2401 West.

(4) A City of Chicago police report dated January 27, 1984, of an accident on the Eisenhower Expressway from an object dropped from an overpass at 2400 West.

(5) The plaintiff's answers to interrogatories in which he named a transportation specialist, Matthew Sielski, as an expert and included his opinion that the defendant's overpass should be screened to prevent the dropping of objects onto motorists below. His opinion was based upon "police report, deposition transcript, pleadings, custom in the industry" and the Guide.

The judge granted the motion for summary judgment on October 3, 1990. On October 24, 1990, the plaintiff filed a motion to reconsider. He also filed a supplemental response to the motion for summary judgment which included the affidavit of the supervisor of the City of Chicago Office of Department Planning and Cartography and a plat survey of the defendant's bridge and surrounding area. The plat showed a park at the southwest edge of the bridge, a housing project on the northeast corner and two schools "close by." The judge denied the motion to reconsider on the ground that the plaintiff failed, as a matter of law, to establish that the defendant had constructive notice of any dangerous condition of its bridge overpass.

■ In his brief the plaintiff asserts that his complaint alleged "that defendant knew or *** should have known that for an extended period of time people dropped objects off overpasses onto motorists below." That assertion is not a precisely accurate description of the allegation of the complaint. The complaint alleges that the defendant knew or should have known that people dropped objects off *the defendant's bridge*, not just "off overpasses" in general. There is no proof, save for reports of occurrences on the morning the plaintiff was injured, of any accidents involving the bridge in question. We believe that under the circumstances we would be justified in affirming summary judgment on the ground advanced by the defendant that the plaintiff failed to establish, as a matter of law, a material allegation of the complaint. We have determined, however, for the sake of finality, to address the plaintiff's argument that a fact finder could conclude that the defendant had such constructive notice that the injury to the plaintiff should have been reasonably foreseeable.

The elements of constructive notice have been explained thus:

"One has constructive notice of a fact when from all the facts and circumstances *known to him at the relevant time*, he has

reason to know that it exists. And a person has reason to know a fact when *he has such information* as would prompt a person exercising reasonable care to acquire knowledge of the fact in question or to infer its existence." (Emphasis added.) 58 Am. Jur. 2d *Notice* §9 (1989).

"*The facts brought to the knowledge of a person* must be sufficient to produce a reasonable conviction that inquiry, if followed up, would lead to a knowledge of the fact of which notice is to be imputed." (Emphasis added.) 66 C.J.S. *Notice* §11 (1950).

In *In re Application of County Collector* (1977), 48 Ill. App. 3d 572, 362 N.E.2d 1335, the court held that one *having knowledge of facts* which would put a reasonable man on inquiry is chargeable with knowledge of other facts which would have been discovered on diligent inquiry.

■■ Thus, in this case there can be no constructive notice of one fact unless there is previous knowledge on the part of the defendant of other facts. It is clear to us that the plaintiff has failed to establish knowledge of the other facts that would give rise to a finding of constructive notice on the part of the defendant that its bridge was maintained in a dangerous condition. Of all the evidence submitted by the plaintiff, the defendant could be charged with knowledge of only the occurrences that happened on the morning in question, including the occurrence involving the plaintiff. There is a complete absence of proof of any knowledge on the part of the defendant of the incidents on other overpasses or of the Guide, published in 1968, upon which the plaintiff places such reliance. (We will discuss the Guide in more detail later.) The plaintiff expressly argues that the defendant is charged with constructive notice of the Guide and of the incidents involving other overpasses on other dates and that, therefore, constructive notice of those facts establishes constructive notice of the dangerous condition of the defendant's bridge. The plaintiff does not explain how the defendant was placed on constructive notice of the Guide or the other incidents at other locations. This is a bootstrap argument, and we reject it.

The defendant may properly be charged with notice of the other incidents of vehicles struck by objects thrown from the defendant's overpass at or about the same time the plaintiff was injured. The issue, however, becomes whether those incidents occurred at a time sufficiently before the plaintiff was injured to permit the defendant to take steps to correct any dangerous condition, or more specifically, whether the defendant had sufficient time to install protective screening after the other occurrences and before the plaintiff's injury.

Generally, whether a dangerous condition exists for a sufficient length of time before an injury for the owner of property to be deemed to have constructive notice is a question of fact. (*Livings v. City of Chicago* (1975), 26 Ill. App. 3d 850, 326 N.E.2d 170.) However, if the evidence viewed in its aspect most favorable to the plaintiff so overwhelmingly favors the defendant that no contrary finding based on that evidence could ever stand, the issue becomes a question of law. (*Cook v. Gould* (1982), 109 Ill. App. 3d 311, 440 N.E.2d 448.) Contrary to the plaintiff's insistence, no reasonable person could conclude that the other incidents that occurred on the morning in question happened before the plaintiff's injury in sufficient time to permit the defendant to take remedial steps. It would be ridiculous to hold otherwise. In fact, the record is not clear whether the other incidents occurred before or after the injury to the plaintiff. The burden of proof to show constructive notice of the existence of the dangerous condition of the defendant's bridge was on the plaintiff. (*Miller v. Chicago Transit Authority* (1966), 78 Ill. App. 2d 375, 223 N.E.2d 323.) We conclude, as a matter of law, that the plaintiff has failed to maintain that burden of proof. For that additional reason, the judge's order granting summary judgment should be affirmed.

The principal case relied upon by the plaintiff is *Beffa v. Terminal R.R. Association* (1991), 208 Ill. App. 3d 7, 566 N.E.2d 846. The facts of that case, which were brought out at a trial, are in sharp contrast to the facts of this case. The defendant's railroad bridge, which was formed by the railroad tracks and a *sidewalk*, ran at ground level. The street had been lowered and made into an underpass. The bridge was convenient for people living nearby to use as a shortcut. The use was so heavy that the railroad's chief engineer said that there was little the railroad could do to prevent it. Thirty years before the accident the railroad had been warned that the bridge was decaying and to make the bridge solid. Twenty-one years before the accident a woman informed the railroad that concrete had come off the bridge and damaged her car as she was passing underneath. Six days before the accident the railroad's track supervisor inspected the bridge and noted that the ties had rotted and the tie-plates had come loose. The railroad knew the bridge was in a high-crime area. The track supervisor said that when he was in the area he was "extra careful." He also said there were vandals in the area all the time and that he had known that ever since he began working for the railroad. He also testified that *he had heard of vandals getting on the bridge and throwing things on people below.*

A police officer testified that he "averaged one to two serious injuries" each summertime resulting from things falling or being dropped from the bridge. A witness testified that she saw two or three children on the railroad overpass at the same time that the plaintiff, a police officer, was in a squad car in the area of the overpass. The children moved to the edge of the overpass, and as the squad car came under the overpass, something fell or was dropped from where the children were standing, and they ran. A 20-pound, railroad tie-plate crashed through the squad car window and shattered the plaintiff's lower face.

The appellate court affirmed the judgment on two grounds: the proof established that, if the tie-plate fell or was unintentionally knocked off the bridge, the negligence of the defendant in maintaining the bridge created the condition on the defendant's premises that caused the injury; the court also held that the verdict could be sustained on a finding that the object that injured the plaintiff was thrown from the bridge. In doing so, the court pointed out that the defendant knew the bridge was in a high-crime area, knew that people used the bridge as a shortcut and knew that objects had fallen or been dropped from this particular overpass. The court also pointed out that the defendant should have realized that *pedestrians* dropped objects from the overpass and that the bridge, as it disintegrated, might furnish the ammunition itself to those who were inclined to drop objects from the overpass. Factually, the *Beffa* case is wide of the mark in this case.

■ Before leaving *Beffa*, we express recognition, and the plaintiff emphasizes, that the same Guide used by the plaintiff here was introduced into evidence in *Beffa* and was discussed by the appellate court. The plaintiff here describes the Guide as an "official document of record" and as an "authoritative text." He asked the trial court, as he asks us apparently, to take judicial notice of the Guide. (He also asked the trial court to take judicial notice of the police reports.) We are not prepared to take judicial notice of or to accept the Guide as an "official document of record" nor do we believe that the *Beffa* case has elevated the Guide to that status. The opinion simply refers to the fact that the Guide was put into evidence and the railroad's chief engineer was cross-examined from it. The court referred to the Guide as support for its statement that "[t]he problem of objects being thrown off bridges is widespread and recurrent." (208 Ill. App. 3d at 10.) Significantly, the court added, "According to the guide, screens should be considered on all overpasses in large urban areas *used exclusively by pedestrians* and not easily kept under surveillance by police." (Emphasis added.) 208 Ill. App. 3d at 11.

Turning to the Guide itself, we believe it may be fairly argued that the Guide supports the defendant's position as much as the plaintiff's. The Guide, which describes itself as an "Informational Guide," contains an introduction that includes the following:

> "With the advent of extensive freeway development in the United States the problem of objects being thrown or dropped from *overpass walks* onto vehicles traveling below has become a serious one in some areas." (Emphasis added.)

In its description of the "Type of Barriers," the Guide refers to "Pedestrian Overpasses" and "Vehicular and Pedestrian Overpasses" and includes pictures of only pedestrian or pedestrian-vehicular overpasses. The defendant's bridge is exclusively a railroad bridge. It consists only of five sets of railroad tracks. There is no pedestrian walkway. The only vehicles that travel over the bridge are railroad cars or engines.

The plaintiff argues that the absence of screening on this overpass and the presence of screening on other overpasses acts as a "magnet" to vandals to use the unscreened overpass to throw things onto the expressway. The Guide seems to refute that argument:

> "There is no practical device or method yet devised that can be universally applied to prevent a determined individual from dropping an object from an overpass.
>
> * * *
>
> It is also a known fact that any type of physical preventive measure [such as screening] acts as a motivating challenge to some individuals."

The plaintiff makes much of the fact that the defendant did not object to the introduction of the Guide. The failure to object, he argues, amounts to an admission by the defendant that the Guide is "authoritative." We agree with the defendant's position that its failure to object to the admissibility of the Guide does not bar the defendant from arguing that the Guide is entitled to no weight in this case or, at least, does not support the plaintiff's position.

For these reasons, we conclude that no material fact remains unresolved; that the plaintiff would be unable, as a matter of law, to show that the plaintiff's injuries were reasonably foreseeable by the defendant; and, consequently, that summary judgment was properly entered.

The judgment of the circuit court is affirmed.

Judgment affirmed.

McNAMARA and LaPORTA, JJ., concur.