NOS. 4-10-0137, 4-10-0138 cons.     Opinion Filed 4/29/11

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| JANE DOE-3, a Minor, Through Her Mother and Next Friend, JULIE DOE-3; and JULIE DOE-3, Individually, | ) ) ) | Appeal from Circuit Court of Champaign County |
|       Plaintiffs-Appellants, | ) | No. 08L209 |
|       v.    (No. 4-10-0137) | ) | |
| JON WHITE; McLEAN COUNTY UNIT DISTRICT NO. 5 BOARD OF DIRECTORS; JIM BRAKSICK; ALAN CHAPMAN; DALE HEIDBREDER; EDWARD HEINEMANN; and JOHN PYE, | ) ) ) ) ) | |
|       Defendants-Appellees. | ) ) | |
| ------------------------------------------------------------ | ) ) | |
| JANE DOE-7, a Minor, Through Her Mother and Next Friend, JULIE DOE-7; and JULIE DOE-7, Individually, | ) ) ) | No. 08L215 |
|       Plaintiffs-Appellants, | ) | |
|       v.    (No. 4-10-0138) | ) | |
| McLEAN COUNTY UNIT DISTRICT NO. 5 BOARD OF DIRECTORS; JIM BRAKSICK; ALAN CHAPMAN; DALE HEIDBREDER; EDWARD HEINEMANN; and JOHN PYE, | ) ) ) ) | Honorable Michael Q. Jones, |
|       Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE APPLETON delivered the judgment of the court, with opinion.
Justices Steigmann and McCullough concurred in the judgment and opinion.

**OPINION**

Plaintiffs Jane Doe-3 and Jane Doe-7 were second-grade students in

defendant Jon White's class at Thomas Paine Elementary School in Urbana. Both girls

were sexually abused by White. They each, along with their mothers, filed lawsuits against

the named defendants for their injuries. The claims at issue in this appeal are based on allegations that defendants knew that White had sexually abused students at his previous school, but failed to report the abuse, and instead allowed and facilitated White to secure employment in Urbana.

Defendants filed motions to dismiss, claiming they owed no duty to plaintiffs. The trial court agreed with defendants and granted their motions. Plaintiffs filed these interlocutory appeals, challenging the court's dismissal orders. We consolidated the cases on review. For the reasons that follow, we find the court erred in dismissing the complaints and we remand for further proceedings.

## I. BACKGROUND

Defendant White was employed as an elementary school teacher in the McLean County School District (McLean) during the 2002-05 school years. In August 2005, the Urbana School District (Urbana) hired White and he began teaching second grade at Thomas Paine Elementary School. During his first year at Urbana, the 2005-06 school year, plaintiff Jane Doe-3 was a student in White's second grade class at Thomas Paine. During White's second year at Urbana, the 2006-07 school year, plaintiff Jane Doe-7 was a student in White's second grade class at Thomas Paine. When each plaintiff was a student in White's class, she was the victim of White's sexual misconduct, sexual harassment, sexual grooming, and sexual abuse.

White's conduct is not in dispute. He was eventually convicted of molesting his students in both the McLean and Urbana school districts. Plaintiffs discovered that White had sexually harassed and abused his elementary school female students while

teaching in McLean, and that the individual administrators at McLean had actual knowledge of White's conduct. Plaintiffs also learned that, due to White's conduct, the McLean administrators sought White's resignation from their district. Plaintiffs alleged the following: (1) no one at McLean reported White's abuse to the Illinois Department of Children and Family Services (DCFS), (2) one of the individual administrators at McLean created a falsely positive letter of reference or recommendation for White, (3) individual administrators at McLean entered into a severance agreement with White that concealed the sexual abuse, (4) the individual administrators falsified information on Urbana's verification-of-teaching-experience form submitted to McLean for completion, and (5) the individual administrators failed to inform Urbana of White's misconduct but, instead, "passed" him to that district.

Plaintiffs refer to McLean's failure to inform Urbana, and its recommendation of White for employment when it had actual knowledge of White's conduct, as "passing." In their complaints, plaintiffs define "passing" as "a School District's conduct in passing a teacher who is known to have committed teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse to another School District without reporting [that conduct], *** concealing known prior teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse."

A. Allegations in the Second-Amended Complaints

In February 2009, plaintiffs separately filed second-amended complaints, each alleging various causes of action against White, Urbana, McLean, and various administrators of each district. Of the numerous causes of actions alleged, those at issue

- 3 -

in this appeal involve only McLean and its individual administrators--counts III through XI of plaintiff Jane Doe-3's complaint and counts III through IX of plaintiff Jane Doe-7's complaint. In count III in both complaints, plaintiffs allege McLean Assistant Superintendent Pye, Superintendent Chapman, Principal Heinemann, Assistant Principal Heidbreder, and Principal Braksick engaged in willful and wanton misconduct. They alleged that each individual, as White's supervisor, had a mandatory duty to report White's misconduct in accordance with the Abused and Neglected Child Reporting Act (Reporting Act) (325 ILCS 5/1 through 11.8 (West 2008)). They failed to do so. Instead, they concealed and conspired to conceal White's misconduct when they passed him to Urbana, willfully and wantonly, and with conscious disregard for the safety of all foreseeable minor female students, including plaintiffs. As a result of the individual administrators' willful and wanton conduct, plaintiffs suffered harm.

In count IV in both complaints, plaintiffs alleged McLean was liable based on a theory of *respondeat superior*, as the individual administrators' conduct alleged in count III occurred within the scope of their employment.

In count V in both complaints, plaintiffs' mothers alleged a cause of action for fraudulent concealment, claiming the individual administrators had a duty to report White's misconduct but, instead, deliberately and fraudulently concealed their actual knowledge of his misconduct by making fraudulent misrepresentations to Urbana regarding White. Urbana relied on the administrators' false representations in hiring White, thereby causing plaintiffs' mothers severe emotional distress.

In count VI in both complaints, plaintiffs' mothers alleged McLean was liable

based on a theory of *respondeat superior*, as the individual administrators' conduct alleged in count V occurred within the scope of their employment.

In count VII in both complaints, plaintiffs alleged the individual administrators willfully conspired to violate their mandatory duty to report White's misconduct pursuant to the Reporting Act, causing plaintiffs harm. In count VIII in both complaints, plaintiffs alleged McLean was liable based on *respondeat superior*, as the alleged conspiracy occurred within the scope of their employment.

In count IX in both complaints, plaintiffs' mothers alleged McLean and the individual administrators caused plaintiffs to suffer sexual abuse, sexual harassment, and sexual grooming, injuries for which plaintiffs have received medical and mental-health treatment. Such treatment has resulted in medical expenses for which plaintiffs' mothers are responsible pursuant to section 15 of the Rights of Married Persons Act (750 ILCS 65/15 (West 2008)), sometimes referred to as the family medical expense act and for which they seek reimbursement from McLean and the individual administrators.

In count X of plaintiff Jane Doe-3's complaint, she alleged the individual administrators breached their fiduciary duties of trust to her by willfully and wantonly passing White to Urbana. She claimed this breach of trust proximately caused her harm. In count XI, plaintiff Jane Doe-3 alleged McLean was liable based on *respondeat superior*, as the alleged breach of fiduciary duty occurred within the scopes of their employment. Plaintiff Jane Doe-7 did not allege any cause of action related to a breach of fiduciary duty.

B. Motions To Dismiss

In March 2009, in both cases, McLean and the individual administrators filed

motions to dismiss plaintiffs' second-amended complaint pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2008)). Assistant Principal Heidbreder filed his own motion, as he was not represented by McLean's and the other administrator's attorney. However, Heidbreder's motions mirrored those of McLean and the other individual administrators. First, McLean and the individual administrators, including Heidbreder, claimed that pursuant to the public-duty rule, they owed no legal duty to plaintiffs because plaintiffs were never students in the McLean district. Second, they claim a private cause of action cannot be maintained for a failure to report under the Reporting Act. Third, plaintiffs suffered no pecuniary damages and, therefore, neither they nor their mothers can maintain a cause of action for fraudulent misrepresentation. Fourth, because plaintiffs have failed to allege any viable cause of action against the individual administrators, a claim for *respondeat superior* cannot be maintained against McLean. Fifth, pursuant to sections 2-604 and 2-604.1 of the Code of Civil Procedure (735 ILCS 5/2-604, 2-604.1 (West 2008)), plaintiffs' complaints must be dismissed because they cannot seek punitive damages or include an *ad damnum* clause in a personal-injury action.

In June 2009, the trial court conducted a hearing on defendants' motion to dismiss in both cases. After considering arguments of counsel, the court held that the public-duty rule applied and precluded plaintiffs' claims against McLean and the individual administrators. The court found that neither McLean nor its administrators owed a duty of care to plaintiffs. The court also found that there existed no cause of action for the concept plaintiffs referred to as "passing." Further, the court found fraud was not available as a cause of action because there had been no pecuniary loss.

C. Motions To Reconsider

In October 2009, plaintiffs separately filed motions to reconsider the trial court's dismissal of their second-amended complaints based on newly discovered evidence. According to plaintiffs, there was a related pending lawsuit in federal court in the Central District of Illinois, Peoria Division, filed by Jane Doe-10 and Jane Doe-11 (students in the McLean school district) against White, McLean, and the individual administrators (case No. 08-CV-1287). As part of discovery in that federal lawsuit, McLean and the individual administrators produced a copy of a January 2007 e-mail communication between Assistant Superintendent Pye and Julie Bastings, the teacher's union representative. According to plaintiffs, the message from Pye was a "smoking gun" in terms of demonstrating McLean's intent to "pass" White to Urbana. The e-mail stated as follows:

"Please keep this information confidential, but I thought you would be interested in hearing that Jon White was arrested in Urbana today. I don't know the specific charges, but it appears to be much worse than the issues he faced here. I'm glad we took the steps we did to get him out of the district. I believe it was you who said that he was on a path to further problems."

In December 2009, the trial court conducted a hearing on plaintiffs' motions to reconsider. After considering the arguments of counsel, the court denied plaintiffs' motions, finding as follows:

"I respectfully disagree with Plaintiffs that this e-mail can

somehow be construed to support an argument that they did have direct and immediate control over either of the Plaintiffs.

As a side note, I think Defendants are also correct when they suggest that 2-204 is not completely restricted to vicarious liability to respondeat superior situations, but at any rate, because I believe the e-mail does not operate to allow the court to find now that either of the Plaintiffs was under the direct and the immediate control over any of the Unit 5 Defendants, then I believe that there continues to be no duty. If there is no duty, there is no tort. If there is no tort, there is no conspiracy. And if the Complaint was amended to include this e-mail, it is the court's view that then the court would not allow amendment because it would not cure the defect in the pleading."

The court entered an order pursuant to Illinois Supreme Court Rule 304 (eff. Feb. 26, 2010), allowing plaintiffs to immediately appeal. These consolidated appeals followed.

## II. ANALYSIS

### A. Standard of Review

In this appeal, plaintiffs challenge the trial court's orders granting defendants' section 2-619.1 motions to dismiss the second-amended complaints. Defendants had claimed (1) the complaints should be dismissed because plaintiffs were unable to plead any set of facts that would entitle them to relief (735 ILCS 5/2-615(a) (West 2008)) or (2) even

- 8 -

if plaintiffs had sufficiently alleged otherwise viable causes of action, the claims were barred by the applicable statute of limitations and/or the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 through 10-101 (West 2008)) (735 ILCS 5/2-619 (West 2008))). Regardless of whether the court dismissed plaintiffs' complaints pursuant to section 2-615 or 2-619, or a combination of both sections pursuant to section 2-619.1, our standard of review is the same. We review *de novo* the court's orders of dismissal. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). In doing so, we will accept as true all well-pleaded factual allegations. *Morris v. Illinois Central R.R. Co.*, 382 Ill. App. 3d 884, 886 (2008).

### B. Plaintiffs' Allegations of Defendants' Liability

Under our fact-pleading standard, plaintiffs must allege facts sufficient to bring a claim within a legally recognized cause of action. *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997). In the allegations relevant to this appeal, plaintiffs allege McLean and the individual administrators acted in a willful and wanton manner by passing White to their school district--an act which proximately caused plaintiffs' injuries. When pleading willful and wanton conduct, a plaintiff must establish the basic elements of a negligence claim plus the additional requirement that the defendant acted with a conscious disregard for the plaintiff's welfare. *Doe v. Chicago Board of Education*, 213 Ill. 2d 19, 28 (2004). In other words, plaintiffs must allege the existence of a duty, a breach of that duty, an injury proximately caused by the breach, and that the breach was a result of a conscious disregard for plaintiffs' welfare.

"Whether a duty of care exists is a question of law to be determined by the

court." *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414, 422 (2004). To decide, the court must analyze the factual circumstances giving rise to the litigation. *Hernandez v. Rapid Bus Co.*, 267 Ill. App. 3d 519, 522 (1994). Those circumstances include the nature of the relationship between the plaintiff and the defendant. If the law imposes upon the defendant an obligation to act reasonably for the plaintiff's benefit, based on the existence of a relationship, then an enforceable duty exists. See *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 186 (2002). Defendants argue that the law has provided an answer to the question of whether a duty exists in this case. They claim, as the trial court held, that the public-duty rule applies here, meaning they owed no duty to protect individual citizens, such as plaintiffs, from harm.

The public-duty rule is a common-law principle that protects a governmental entity from tort liability sought by an individual injured member of society. The basis upon which the rule is grounded is that the governmental entity owes a duty of care to the public at large, not to individual members of the public. See *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 32 (1998). The rule has historically been applied to cases involving conduct by policemen, firemen, or other first-responder-type personnel of various branches of governmental entities. However, the First District applied the rule to a school district for the first time in 1994. See *Thames v. Board of Education of the City of Chicago*, 269 Ill. App. 3d 210 (1994). They did so again in 1996. See *Lawson v. City of Chicago*, 278 Ill. App. 3d 628 (1996). Both of these cases held that the defendant school districts owed no duty to protect the plaintiffs, who were individual students in those school districts, separate or apart from the members of the district as a whole. The courts further held there

existed no exception or special relationship that would have served to establish the school district's duty of care to its individual members. See *Thames*, 269 Ill. App. 3d at 219; *Lawson*, 278 Ill. App. 3d at 646.

This "special-duty exception" applies when the otherwise immune governmental actor assumes a special relationship to an individual member of the general population. *Huey v. Town of Cicero*, 41 Ill. 2d 361, 363 (1968). The special-duty exception operates to establish (1) a duty where there would otherwise be none under the common-law public-duty rule and (2) liability for negligence where it otherwise would not lie pursuant to the Tort Immunity Act. See *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 326-27 (1995); *Doe v. Calumet City*, 161 Ill. 2d 374, 385-86 (1994).

Illinois courts have established four elements that must be satisfied before the special-duty exception applies. Those are (1) the governmental entity must be uniquely aware of the particular danger or risk to which the plaintiff is exposed; (2) there must be allegations of specific acts or omissions on the entity's part; (3) the specific acts must be affirmative or willful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the entity. *Burdine v. Village of Glendale Heights*, 139 Ill. 2d 501, 508 (1990).

Applying these elements to the facts of its school-district case, the *Thames* court found that the exception did not apply, as the plaintiff had failed to properly allege the existence of a special duty owed to her by the school district. *Thames*, 269 Ill. App. 3d at 216. The facts of *Thames* can be summarized as follows. The plaintiff student was shot inside a classroom at one of the defendant school district's high schools by a fellow student,

who had concealed a firearm inside his book bag. *Thames*, 269 Ill. App. 3d at 211. Plaintiff sued the school district, asserting that it owed her a duty to exercise reasonable care for her safety. The school district allegedly breached that duty by failing to warn parents and students about the potential danger of the presence of weapons and by failing to take adequate measures, such as installing metal detectors, to eradicate the danger. *Thames*, 269 Ill. App. 3d at 214. The trial court had denied the school board's motion to dismiss, finding the complaint set forth sufficient allegations of a "special duty." *Thames*, 269 Ill. App. 3d at 211.

The First District disagreed that plaintiff had sufficiently alleged the existence of a special duty. In the appellate court's opinion, the plaintiff had not pleaded sufficient facts to transform her "from a general citizen into an object of special concern." *Thames*, 269 Ill. App. 3d at 216. The court held the plaintiff did not and could not allege sufficient facts establishing that the school district had a unique awareness of the particular danger (the first element of a special-duty analysis) or that it had immediate and direct control of the plaintiff at the time of the injury (the fourth element of the analysis). *Thames*, 269 Ill. App. 3d at 219. The court reversed the trial court's order denying the school district's motion to dismiss. *Thames*, 269 Ill. App. 3d at 219-20.

Similarly, in *Lawson*, the First District held that the plaintiff had failed to sufficiently allege facts that would impose a special duty upon the defendant school district or the defendant city to protect the plaintiff student from harm. *Lawson*, 278 Ill. App. 3d at 646. As in *Thames*, the plaintiff in *Lawson* was shot by a fellow student on school premises. *Lawson*, 278 Ill. App. 3d at 631. Unlike the high school in *Thames*, the high

- 12 -

school in *Lawson* had installed metal detectors. *Lawson*, 278 Ill. App. 3d at 632. However, the court held that the city's voluntary undertaking of installing the detectors did not override the immunity that the district enjoyed under the Tort Immunity Act because installing the detectors involved a governmental function or conduct that was immune from liability. *Lawson*, 278 Ill. App. 3d at 635.

The trial court here, relying on *Thames* (without mentioning *Lawson*), held that the public-duty rule applied, finding McLean owed no duty to individual students, especially those not in the same district. Further, the court held that the special-duty exception did not apply because McLean had no control over White when he committed the acts that had injured plaintiffs in Urbana. In announcing its decision to dismiss plaintiffs' complaints, the court stated as follows:

> "I believe the Public Duty Rule first of all does apply
> here. I believe Mr. Kearns [(McLean's attorney)] is correct
> when he says the *Thames* case does stand for the proposition
> that the Public Duty Rule applies to schools, and it essentially
> says that municipalities such as the Bloomington School
> District don't owe a duty to protect individual citizens."

The court then applied the special-duty exception and found plaintiffs had failed to establish the fourth element, that of direct and immediate control, at the time the injury occurred.

Contrary to defendants' argument in this appeal and the trial court's finding at the hearing on the motion to dismiss, we find the public-duty rule does not apply under

the circumstances of this case. As mentioned above, the rule generally applies when a plaintiff alleges damages based on a governmental entity's failure to perform adequate governmental services. Examples of such services include allegations that the county's emergency dispatch system failed to work properly (*Donovan v. Village of Ohio*, 397 Ill. App. 3d 844, 845 (2010)); the police failed to timely rescue people from a pileup in a stairwell (*Anthony v. City of Chicago*, 382 Ill. App. 3d 983, 984 (2008)); the city failed to enforce a provision of the building code by granting a person a permit to construct access onto the roof of an apartment building (*Bowler v. City of Chicago*, 376 Ill. App. 3d 208, 209 (2007)); the police failed to respond when dispatched to a call of a vehicle in a ditch (*DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 500-01 (2006)); or the county medical examiner negligently performed an autopsy (*Sims-Hearn v. Office of Medical Examiner*, 359 Ill. App. 3d 439, 441 (2005)). This is not such a case, nor anything similar. This is not a case where McLean or the individual administrators have allegedly negligently performed their ordinary governmental, policing, or enforcement-type function. Instead, this is a case where plaintiffs allege the individual administrators engaged in intentional egregious conduct while in the course of their employment, and that the conduct harmed plaintiffs.

It is not relevant to the analysis here whether the public-duty rule can or should be applied to a school district or in a school context. The context is not the determining factor. Instead, it is the nature of the alleged conduct of the individual administrators that bars the rule's applicability here. There is a great distinction between conduct that would give rise to a conclusion that a governmental entity owes a duty to protect the public at large and not individual citizens and conduct by the governmental

- 14 -

entity that specifically creates the danger complained of. Plaintiffs have alleged conduct of the latter type.

Without the application of the public-duty rule, we must determine whether plaintiffs have alleged sufficient facts to establish the existence of any duty running from McLean and the individual administrators to plaintiffs. To determine whether a duty exists, courts look to certain relevant factors, including the following: (1) the reasonable foreseeability that the defendant's conduct may injure another, (2) the likelihood of an injury occurring, (3) the magnitude of the burden of guarding against such injury, and (4) the consequences of placing that burden on the defendant. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 391 (2004).

Generally, there is no duty requiring one person to protect another from criminal activity by third persons absent a special relationship. *Iseberg v. Gross*, 227 Ill. 2d 78, 87 (2007). Here, there is no "special relationship" between the individual administrators of one school district and the students of another. However, even without a "special relationship," a person could still be liable for the criminal acts of a third party if that person performed a voluntary undertaking to protect another from harm. *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 217 (1988).

Plaintiffs argue that the common law should impose a duty upon McLean and the individual administrators to protect plaintiffs from White's conduct based upon their knowledge of White's past conduct and the reasonable foreseeability of future like conduct. Plaintiffs claim that McLean and the individual administrators assumed a duty to plaintiffs, as Urbana students, by voluntarily undertaking the act of creating and sending a letter to

- 15 -

Urbana endorsing White's ability to teach elementary school students. According to plaintiffs, McLean, through its individual administrators, voluntarily undertook this duty, but did so with a knowing and conscious disregard for plaintiffs' well-being by either recommending White or failing to warn of White's sexual abuse of his students in McLean.

Section 324A of the Restatement (Second) of Torts, which Illinois courts have adopted (see *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 210-11 (1979)), addresses the concept of liability based on a voluntary undertaking and provides as follows:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." Restatement (Second) of Torts §324A, at 142 (1965).

In order for a duty to arise under circumstances to which section 324A may

apply, there must be sufficient facts to put the defendant on notice that an intervening criminal act is likely to occur. In other words, in the context of an intervening criminal act by a third person, "the existence of a legal duty requires that the occurrence be reasonably foreseeable." *Mazzone v. Chicago & North Western Transportation Co.*, 226 Ill. App. 3d 56, 58 (1992). On this point, our supreme court has stated:

> "A familiar treatise on torts warns that it must be remembered that the mere fact that misconduct on the part of another might be foreseen is not of itself sufficient to place the responsibility upon the defendant. W. Keeton, Prosser & Keeton on Torts §44, at 305 (5th ed. 1984). Further, even though the intervening cause may be regarded as foreseeable, the defendant is not liable unless the defendant's conduct has created or increased an unreasonable risk of harm through its intervention. W. Keeton, Prosser & Keeton on Torts §44, at 305 (5th ed. 1984). These comments, contained in the section of the treatise discussing intervening causes, refer the reader to the earlier discussion of the standard of conduct: Under all ordinary and normal circumstances, in the absence of any reason to expect the contrary, the actor may reasonably proceed upon the assumption that others will obey the criminal law. W. Keeton, Prosser & Keeton on Torts §33, at 201 (5th ed. 1984). In other situations, however, the actor may have a duty

of care for the protection of others. Such situations include situations in which the actor has a special responsibility for the protection of the plaintiff, perhaps arising by contract or founded upon a special relationship between the two, and where there is an especial temptation and opportunity for criminal misconduct brought about by the defendant. W. Keeton, Prosser & Keeton on Torts §33, at 201-03 (5th ed. 1984).

These excerpts from the treatise illustrate the link between the questions of the existence of a duty and the existence of legal cause. Both depend on an analysis of foreseeability." (Internal quotation marks omitted.) *Beretta U.S.A.*, 213 Ill. 2d at 409-10.

Further support for plaintiffs' allegations may be found in section 311 of the Restatement (Second) of Torts, which our supreme court adopted in *Board of Education v. A, C & S, Inc.*, 131 Ill. 2d 428, 455 (1989), entitled "Negligent Misrepresentation Involving Risk of Physical Harm." Though the section refers to negligent misrepresentation, it could be applied equally to fraudulent misrepresentation, including only a different mental state. The section provides as follows:

"(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such

information, where such harm results

(a) to the other, or

(b) to such third persons as the actor should expect to be put in peril by the action taken.

(2) Such negligence may consist of failure to exercise reasonable care

(a) in ascertaining the accuracy of the information, or

(b) in the manner in which it is communicated."  Restatement (Second) of Torts §311 (1965).

"The rule of liability in section 311 extends to any defendant who, in the course of an activity which is in furtherance of his own interests, undertakes to give information to another, and knows or should realize that the safety of the person or others may depend upon the accuracy of the information."  (Internal quotation marks omitted.) *Board of Education*, 131 Ill. 2d at 455 (quoting Restatement (Second) of Torts §311, cmt. *b* (1965)).  There appears to be some overlap in the applicability of this Restatement section and that of section 324A, as both impose liability upon the actor's undertaking of an affirmative act.

Regardless of which specific tort principle applies, under the facts alleged in this case, there exists both (1) a voluntary undertaking on the individual administrators'

part that was performed with an alleged intentional disregard for plaintiffs' welfare, as well as (2) the occurrence of a reasonably foreseeable intervening criminal act created by the administrators' conduct. If the well-pleaded allegations set forth in plaintiffs' complaints are true, as we must assume they are at this point in the proceedings, the individual administrators, by creating and tendering a false letter of recommendation, failing to report White's conduct, and failing to warn Urbana of White's conduct, created the opportunity for White to commit further abuse at Urbana. In fact, further abuse was not only foreseeable, but likely. We also note that Illinois law has established a duty to warn others in certain circumstances. "A duty to warn exists where there is unequal knowledge, actual or constructive, and the defendant, possessed of such knowledge, knows or should know that harm might or could occur if no warning is given." *Kirby v. General Paving Co.*, 86 Ill. App. 2d 453, 457 (1967).

Because the individual administrators knew that White had sexually abused students in McLean, it was reasonably foreseeable that White would do the same at Urbana. As alleged in the complaints, the individual administrators voluntarily undertook a duty, performed the duty in a willful and wanton manner, and as a result, a reasonably foreseeable intervening criminal act occurred, causing plaintiffs' damages. Therefore, under the factual circumstances of this case as alleged by plaintiffs in their respective complaints, and after applying the common-law doctrines set forth above to those circumstances, we find that plaintiffs have sufficiently alleged that the individual administrators and McLean, through the actions of its individual administrators, had a duty either (1) to warn Urbana and its students of the danger, or (2) to take reasonable

precautions by reporting the abuse to DCFS to prevent foreseeable further criminal acts of abuse.

McLean and its administrators could have refused to prepare a letter of recommendation, warned Urbana of the potential danger, and/or reported the abuse to DCFS as mandated by the Reporting Act. Instead, according to plaintiffs, they intentionally chose to create a condition that placed plaintiffs and other students at Urbana at the risk of foreseeable harm. They created a condition conducive to future abuse by White. Subject to the applicable standards of proof, these allegations may be sufficient to support plaintiffs' claims for damages. As an aside, we note that the Tort Immunity Act is not available to defendants here. Just as the public-duty rule did not apply, the Tort Immunity Act does not apply based on the nature of the conduct at issue here. See *Calumet City*, 161 Ill. 2d at 390 (pleading of willful and wanton conduct removes cause of action from applicability of the Tort Immunity Act pursuant to section 2-202 (745 ILCS 10/2-202 (West 2008))).

In sum, we find the trial court erred in granting defendants' motion to dismiss. Plaintiffs have alleged a cause of action based on McLean's and the individual administrators' voluntary undertaking and their provision of information with the intentional disregard for plaintiffs' welfare in light of the foreseeable intervening criminal act likely to cause plaintiffs physical harm. Absent an alleged duty or cause of action contemplated under the Tort Immunity Act, we find McLean and the individual administrators are without the protection of the Act. See *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 192 (1997) (local governmental units are liable in tort unless a tort-immunity

statutory exception applies to the duty as alleged).

We feel compelled to note that plaintiffs have alleged that McLean and the individual administrators engaged in conduct which, if true, can be described in no other term than egregious and, if true, conduct that may shock the conscience. The use of that phrase is akin to the "state-created danger" doctrine developed, applied, and adopted by several of our federal district and circuit courts. We note that the doctrine has not yet been recognized by any Illinois appellate court, our supreme court, or the United States Supreme Court. We mention this doctrine because it specifically applies to state conduct which rises to the level of egregious conduct in the most extreme cases. See *King v. East St. Louis School District 189*, 496 F.3d 812, 814-15, 818 (7th Cir. 2007) (school personnel's enforcement of alleged school policy prohibiting a student's reentry to the school after hours resulted in a student's abduction and rape was not conduct that could be characterized as sufficient to "shock[] the conscience").

Under the "state-created danger" doctrine, the state may be liable because "'the government has a constitutional duty to protect a person against injuries inflicted by a third-party when it affirmatively places the person in a position of danger the person would not otherwise have faced'" and the state actor's conduct in failing to protect an individual shocks the conscience. *Walter v. Pike County, Pennsylvania*, 544 F.3d 182, 192 (3d Cir. 2008) (quoting *Kamara v. Attorney General*, 420 F.3d 202, 206 (3d Cir. 2005)). Conduct sufficient to shock the conscience is a "necessarily fact-bound inquiry." *King*, 496 F.3d at 818. Likewise, the analysis set forth above in this case is intended to apply specifically to the particular and unique facts and circumstances of this case, in that our

decision herein relied solely on the allegations set forth in plaintiffs' complaints.

## III. CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment and remand for further proceedings.

Reversed and remanded.