STAN LIEBER, Plaintiff-Appellant, v. SOUTHERN ILLINOIS UNIVERSITY, Defendant-Appellee.

Fifth District    No. 5—95—0470

Opinion filed May 7, 1996.

Thomas R. Peters and Curtis R. Picou, both of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellant.

Lee Ellen Starkweather and Shari R. Rhode, both of Carbondale, for appellee.

PRESIDING JUSTICE HOPKINS delivered the opinion of the court:

Plaintiff, Stan Lieber, filed a complaint in the Jackson County circuit court seeking mandatory and permanent injunctions to require defendant, Southern Illinois University (SIU), to provide Lieber with certain information requested under the Illinois Freedom of Information Act (Act) (5 ILCS 140/1 *et seq.* (West 1992)). On June 21, 1995, the trial court entered summary judgment in favor of SIU. On appeal, Lieber argues that the trial court failed to apply the proper legal analysis in reaching its decision and that summary judgment in favor of SIU is improper. For reasons we will more fully explain, we reverse.

## I. FACTS

Plaintiff filed his initial complaint on May 18, 1993, alleging that SIU had improperly refused his demand for information under the Act. In his demand, Lieber requested "a complete listing of any and all records relating to freshman housing inquiries, made for the 1993-1994 school year, including the name, address, and telephone number of each and every inquiry received by the University from an accepted freshman, from February 1st, 1993[,] to April 9th, 1993." Lieber owns Stevenson Arms, which is approved as off-campus housing for freshmen attending SIU. Unmarried freshmen at SIU who are under age 21 and who do not live with their parents are required to live in an on-campus dormitory or in approved off-campus housing such as Stevenson Arms.

On September 13, 1993, SIU filed a motion for judgment on the pleadings, alleging that "the information requested by Plaintiff is *per*

*se* exempt under Section 7(1)(b)(i) [(5 ILCS 140/7(1)(b)(i) (West 1992))] because it is personal information maintained with respect to students (i.e., freshman [*sic*]) or other individuals receiving educational services (i.e., information about freshmen housing) from a public body." In the motion for judgment on the pleadings, SIU also argued that among the categories of information specifically exempted by the legislature are those listed in section 7(1)(b) of the Act, which provides as follows:

> "(1) The following shall be exempt from inspection and copying:
> ***
>
> (b) Information that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy, unless the disclosure is consented to in writing by the individual subjects of the information. *** Information exempted under this subsection (b) shall include but is not limited to:
>
> (i) files and personal information maintained with respect to clients, patients, residents, students or other individuals receiving social, medical, educational, vocational, financial, supervisory or custodial care or services directly or indirectly from federal agencies or public bodies." 5 ILCS 140/7(1)(b)(i) (West 1992).

Lieber filed a response to SIU's motion for judgment on the pleadings, arguing that the information he requested was not exempt under the Act and that, in any event, SIU published a student directory listing the same information it claimed to be an unwarranted invasion of the students' privacy. The student directory, which lists the names, addresses, and telephone numbers of SIU students, would not timely fulfill Lieber's demand under the Act.

Although the record does not indicate how the court ruled on SIU's motion for judgment on the pleadings, Lieber filed his first amended complaint for injunctive relief on December 20, 1993. The allegations of the amended complaint that are pertinent to this appeal are: that SIU "solicits prospective students from throughout the State of Illinois"; that SIU "owns and operates certain student housing facilities for its students"; that SIU charges each freshman student living in an on-campus dormitory more than $3,100 annually; that the costs of and services provided by off-campus housing, such as that owned by Lieber, are different from the costs of and services provided by SIU for on-campus housing; that SIU receives thousands of inquiries about its freshman housing facilities each year from students, their parents and guardians, and the public; that in the past Lieber made "numerous similar demands," pursuant to the Act, upon SIU; that at all prior times SIU "provided all materials

sought"; and that SIU, by its president, John Guyon, refused Lieber's current request for information.

On January 12, 1994, SIU filed its answer and first affirmative defense to Lieber's first amended complaint. In the answer, SIU admitted all of the allegations of the complaint, except that SIU denied that Lieber made similar demands for information in the past or that SIU provided the information upon request in the past, and SIU denied that it had violated the Act. In its affirmative defense, SIU alleged that Lieber's request for information "was made for a purpose of generating income" for Lieber from Stevenson Arms; that the requested information would not disclose any information regarding "the conduct of government" or the official acts of any public official or public employee; that the individuals requesting information regarding freshman housing at SIU have a "personal privacy interest in their name, address and telephone number"; that the invasion of that privacy interest would be "unwarranted"; and that SIU had not violated the Act by denying Lieber's request for information.

Lieber filed a reply in objection to SIU's affirmative defense, arguing that the allegations did not amount to an affirmative defense, that SIU's previous practice of disseminating the very material it was seeking to conceal estopped SIU from asserting any such privacy right, and that SIU's "refusal to abide by the duty imposed by the [Act] deprives its applicants, who are not yet students, of timely access to all available freshman, university-approved, housing options and thus prejudices the choice of affordable university-approved housing."

On the 28th of December, 1994, the court granted SIU's motion for leave to file an amended affirmative defense. In its amended affirmative defense, SIU alleged only the following:

"1. The information sought by Plaintiff is exempt from disclosure under the Freedom of Information Act because the information, if disclosed, would constitute a clearly unwarranted invasion of personal privacy."

SIU made no further allegations and cited to section "7(i)(b) [sic]." We note that there is no section 7(i)(b) in the Act, but from the context of the record, we assume that SIU meant to refer to section 7(1)(b)(i).

On January 11, 1995, Lieber filed a reply in objection to SIU's amended affirmative defense, arguing, "[The] 'affirmative defense' is plead [sic] as a bald conclusion without any requisite facts as required in Illinois," and again arguing the estoppel and other issues argued in its objection to SIU's first affirmative defense.

On February 9, 1995, SIU filed a motion for summary judgment,

and on February 14, 1995, Lieber filed his motion for summary judgment. The court denied both motions on February 21, 1995, without explanation.

On May 8, 1995, SIU filed its second motion for summary judgment, alleging that since the date the court denied both parties' earlier motions for summary judgment, SIU "obtained significant evidence regarding the purpose of the Plaintiff's Freedom of Information Act request." SIU argued that the only reason Lieber was seeking the information was to solicit students to live in Stevenson Arms, which Lieber owns. In support of this allegation, SIU quoted Clyde Swanson, the manager of Stevenson Arms, from his deposition, wherein he testified that Lieber's intent for the use of the information requested "remains as it always was; to insure that [he] had an equal opportunity to market [his] property." In the motion, SIU further alleged that Swanson testified in his deposition that when "the names of admitted students were received in the past, Stevenson Arms 'mailed each person on that list a letter of solicitation.'" SIU argued that it was entitled to judgment as a matter of law based upon the following statement of public policy in the Act: "This Act is not intended to be used to violate individual privacy, nor for the purpose of furthering a commercial enterprise." 5 ILCS 140/1 (West 1992).

On June 6, 1995, Lieber filed his response to SIU's second motion for summary judgment. Lieber framed the issue for the court as "when, if ever, the court may or must consider the plaintiff's purpose in seeking disclosure of the requested documents." Lieber argued that his purpose in seeking the information was "irrelevant in this case."

In additional written arguments to the court, the parties outlined their respective positions concerning whether Lieber's request would improperly further his commercial enterprise. SIU argued:

> "There is no public purpose that will be served by disclosing the information requested. The only interest that will be served is the Plaintiff's commercial interest. Allowing the privacy rights of many individuals to be invaded in order to promote the commercial interest of another is fundamentally unjust and was not intended by the Legislature.
>
> ***
>
> Names, addressed [sic], and phone numbers of individuals who have inquired about freshmen housing at SIU will tell the public nothing about the management or operation of SIU. The disclosure of this information would be a clearly unwarranted invasion of privacy."

Lieber countered that SIU's argument was an "insufficient excuse for failing to provide at least a portion of the requested information, namely, the addresses." Lieber argued that his intent in requesting the information, as shown by all of the evidence before the court, was to turn the information over to a not-for-profit entity, "to ascertain the effectiveness of SIUC's administration in recruiting in various areas of the state and country," and "to inform the individuals of other housing alternatives which may, in fact, provide a more convenient and economical alternative to on-campus housing, as well as an environment more conducive to study." Lieber concluded his argument as follows:

"Further, as previously stated, the operation of an off-campus housing facility is no more a commercial enterprise than SIU's operation of on-campus housing. In fact, SIU mandates an extensive approval process and promulgates numerous rules relating to freshman[-]approved off-campus housing, evidencing its quasi-public nature."

The trial court entered an order on June 21, 1995, granting SIU's motion for summary judgment. In explaining its order, the court stated that it "strongly" disagreed with Lieber's argument that his purpose in seeking the information was irrelevant. The relevant portions of the court's order are as follows:

"Plaintiff seeks an economic and commercial advantage under an action and an Act (5 ILCS 140/1 et. [sic] seq.), which clearly states in its Public policy-Legislative intent (5 ILCS 140/1) section, is not intended and, to highlight this intent, further creates a specific exemption, 5 ILCS 140/7(1)(b)(i).

The Freedom of Information Act *** exists as a check on the government and its agencies by the citizens and '... is necessary to enable people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest.' 5 ILCS 140/1. The position taken by Plaintiff seeks a commercial financial advantage bereft of any laudatory purpose of this Act. The [Act] does not allow a party a competitive commercial advantage or gain premised on the work product of a public institution of higher learning."

This appeal followed.

## II. ANALYSIS

We begin our analysis by noting that the parties and the trial court seemed somewhat confused by how to apply the Act to the case at bar. We intend, in this opinion, to articulate and, hopefully, clarify the specific rules for applying the Act to requests for information from public entities.

■ In *American Federation of State, County & Municipal Employees (AFSCME), AFL-CIO v. County of Cook*, 136 Ill. 2d 334, 341 (1990) (hereinafter AFSCME), our supreme court described the Act as "a clearly stated statute," which "creates a simple mechanism whereby a public body *must* comply with a proper request for information unless it can avoid providing the information by invoking one of the narrow exceptions in the Act." (Emphasis added.) Thus, we feel obliged to apply the Act according to the plain meaning of the words used by the legislature, without resort to extrinsic rules of construction, unless the meaning of the words used is unclear, making the use of construction aids necessary.

This court has previously set forth the standard for a public entity's compliance with the Act. Clearly, the burden to prove that the information is exempt under the Act is upon the public body that denies a request for information.

"There is a presumption that public records be open and accessible, subject only to exemptions that are to be narrowly construed. [Citation.] Although section 7 of the Act provides an extensive list of exemptions to disclosure, the burden of proof is on the governmental agency to establish that the documents in question are exempt from disclosure. [Citation.] 'To meet this burden and to assist the court in making its determination, the agency must provide a *detailed* justification for its claim of exemption, addressing the requested documents specifically and in a manner allowing for adequate adversary testing.' (Emphasis in original.) [Citation.]" *Carbondale Convention Center, Inc. v. City of Carbondale*, 245 Ill. App. 3d 474, 476-77 (1993).

The Act does not contemplate shifting the burden of proof to the party requesting the information. *AFSCME*, 136 Ill. 2d at 346. Moreover, the government agency from which the information is sought may not indirectly shift the burden of proof by alleging that the information is sought for an improper purpose. The Act "does not require that the persons requesting the information explain their need for that information or their planned use of the information." *Family Life League v. Department of Public Aid*, 112 Ill. 2d 449, 456 (1986).

Here, both SIU and the trial court primarily focused their inquiry on Lieber's purpose in requesting the information. The trial court's order emphasized, almost exclusively, its finding that Lieber's request would not inform the public about the affairs of SIU but, on the contrary, would only "serve one very narrow purpose—to further a commercial enterprise." Lieber argues that the trial court erred by overemphasizing his purpose in requesting the information and

thereby improperly shifted the burden to Lieber to prove that his purpose in requesting the information comported with the stated public policy of the Act. We agree.

■ The proper focus for a trial court when faced with a challenge to a denial of a request under the Act is twofold. First, the court should determine if the request arguably calls for information that is covered by one of the specific exemptions listed in section 7 or, generally, if the request is for "[i]nformation that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy." 5 ILCS 140/7 (West 1992). If the court determines that the release of the information would not constitute a clearly unwarranted invasion of personal privacy and that it does not fall within one of the listed exemptions of section 7, then the court should look no further but should order the government agency to produce the information immediately, "as exemption from disclosure is not warranted." *David Blumenfeld, Ltd. v. Department of Professional Regulation*, 263 Ill. App. 3d 981, 986 (1993); see also *Margolis v. Director of Department of Revenue*, 180 Ill. App. 3d 1084 (1989).

■ Where the court determines that one of the specific exemptions of section 7 arguably applies, then it must balance all of the relevant factors to determine if disclosure would amount to a clearly unwarranted invasion of personal privacy. The relevant factors identified in prior cases are: (1) the plaintiff's interest in disclosure; (2) the public interest in disclosure; (3) the degree of invasion of personal privacy; and (4) the availability of alternative means of obtaining the requested information. *Margolis*, 180 Ill. App. 3d at 1089-90. If the court determines that the balance favors disclosure, then the information should be disclosed. If the balance tips in favor of protecting the information, the denial will be upheld.

■ In the case at bar, SIU argued that the information was exempt from disclosure under section 7(1)(b)(i), which provides for the exemption of "files and personal information maintained with respect to *** students or other individuals receiving *** educational *** care or services directly or indirectly from federal agencies or public bodies." 5 ILCS 140/7(1)(b)(i) (West 1992). It is clear that SIU is a "public body" within the meaning of the Act (5 ILCS 140/2(a) (West 1992)) and that the names, addresses, and telephone numbers requested are "personal information" in that the information will identify particular people. *Margolis*, 180 Ill. App. 3d at 1088.

Lieber argues that SIU did not present enough facts to establish an affirmative defense to disclosure. We agree that SIU's amended affirmative defense was merely a conclusion without any supporting factual allegations. SIU alleged only a conclusion, "The information

sought by Plaintiff is exempt from disclosure under the Freedom of Information Act because the information, if disclosed, would constitute a clearly unwarranted invasion of personal privacy," and cited section 7 of the Act.

In the *Carbondale Convention Center* case, this court has already declared the rules to which a government entity is subject when it denies a demand for information under the Act. *Carbondale Convention Center*, 245 Ill. App. 3d 474. In this opinion, we hereby readopt those rules as they apply to the case at bar. In the instant case, SIU did not meet its burden of proof to establish that the requested information was exempt from disclosure, and the trial court abused its discretion by granting SIU's motion for summary judgment. Even taking into account the entire record before the court, including the transcripts of hearings before the court, we cannot find any factual basis, detailed or not, to meet the burden of proof or to assist the trial court in deciding that SIU was not required to provide Lieber with the requested information. Nowhere in the record is there any evidence of how this information will invade anyone's privacy.

On the contrary, as Lieber's request was for information relating to inquiries about freshman housing, it seems that his request is simply an extension of the individuals' previous requests for information about freshman housing. Additionally, as SIU publishes a directory listing the same information about the students, it is not logical to assume that the information provided to Lieber will somehow invade the students' privacy simply because Lieber requested the information prior to the directory's publication.

Finally, as Lieber points out, only a portion of his request is specifically targeted at students. The remainder of the request asks for a "complete listing of any and all records relating to freshman housing inquiries." These inquiries come from people other than "students or other individuals receiving social, medical, educational, vocational, financial, supervisory or custodial care or services directly or indirectly from federal agencies or public bodies." 5 ILCS 140/7(1)(b)(i) (West 1992). Thus, the trial court should have determined that the portion of the request aimed at obtaining information from individuals other than students was not exempt under the Act. As to the students themselves, as there is no evidence that the information sought will invade their privacy, the court abused its discretion by not requiring SIU to provide the information to Lieber.

An even more compelling basis for our reversal, however, is that the trial court appears to have improperly used the public policy section of the Act as a barrier to Lieber's request. The public policy statement of the Act does not provide governmental entities with an

alternative exemption from disclosure. A public body may validly shield itself from mandatory disclosure under the Act only by meeting its burden to prove that the information is exempt under section 7. 5 ILCS 140/7 (West 1992).

"[T]he legislature has declared that the 'Act is not intended to be used to violate individual privacy, nor for the purpose of furthering a commercial enterprise, or to disrupt the duly-undertaken work of any public body independent of the fulfillment of any of the fore-mentioned rights of the people to access to information.' (5 ILCS 140/1 (West 1992).) The language that immediately follows this declaration, however, is a clear statement from the legislature on the question of how the Act is to be interpreted including the exemption provisions. It states:

'These restraints on information access should be seen as limited exceptions to the general rule that people have a right to know the decisions, policies, procedures, rules, standards and other aspects of government activity that affect the conduct of government and the lives of any or all of the people. *The provisions of this Act shall be construed to this end.*' " (Emphasis added by *Cooper* court.) *Cooper v. Department of the Lottery*, 266 Ill. App. 3d 1007, 1015-16 (1994), quoting 5 ILCS 140/1 (West 1992).

We agree with the first district in *Cooper*; the main purpose of the Act is to provide the public with easy access to government information, and the exemptions of section 7 and the public policy statements of section 1 should not be construed to defeat that purpose. Therefore, the trial court erred in requiring Lieber to explain his purpose in requesting the information and in denying his request on the basis that the information would further his commercial enterprise. Whether Lieber will personally gain from his access to the information should not automatically defeat his request under the Act (*Cooper*, 266 Ill. App. 3d at 1022-23) but is simply one part of the four-factor test set forth in *Margolis*, 180 Ill. App. 3d 1084.

If SIU had presented the court with a sufficiently detailed factual basis to meet its threshold requirement of showing that disclosure would constitute an unwarranted invasion of personal privacy, then the court would have been justified in looking at Lieber's interest in seeking the information. However, even then, Lieber's interest in the information would only be one part of the analysis, and the court would also have to weigh the public's interest, the degree of invasion of personal privacy, and any alternative means of obtaining the information. *Margolis*, 180 Ill. App. 3d at 1089-90. In this case, SIU utterly failed to meet its burden to show that any exemption under section 7 applies to Lieber's request. Therefore, the trial court should have found that Lieber was entitled to the information immediately.

Since this case was erroneously decided on SIU's second motion for summary judgment, we now consider whether this case should be remanded for further proceedings. Before SIU filed its second motion for summary judgment, the trial court considered both parties' earlier motions for summary judgment and denied both without explanation. However, SIU's second motion for summary judgment did not provide the court with any additional evidence to support an exemption from disclosure under section 7. Based upon the record, we find that the trial court abused its discretion by denying Lieber's earlier motion for summary judgment. The trial court correctly denied SIU's first motion for summary judgment but improperly granted SIU's second motion for summary judgment. As all of the issues are matters of law for the court to decide, and based upon our authority under Supreme Court Rule 366 (155 Ill. 2d R. 366(a)(5)), we hereby reverse the trial court's denial of Lieber's motion for summary judgment and we remand this case to the trial court with directions to enter summary judgment for Lieber and for further proceedings consistent with this opinion.

Reversed and remanded with directions.

WELCH and MAAG, JJ., concur.