# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***State Journal-Register v. University of Illinois Springfield*, 2013 IL App (4th) 120881**

| | |
|---|---|
| Appellate Court Caption | THE STATE JOURNAL-REGISTER and BRUCE RUSHTON, Plaintiffs-Appellants, v. THE UNIVERSITY OF ILLINOIS SPRINGFIELD; and HARRY BERMAN, in His Official Capacity as Interim Chancellor of the University of Illinois Springfield, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-12-0881 |
| Filed | August 8, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a newspaper's action under the Freedom of Information Act seeking the disclosure of documents related to the resignation of three coaches at defendant state university, the trial court erred in denying plaintiffs' request for an e-mail string containing a student complaint, once redacted, an internal communications concerning a personnel matter, once redacted, and the coaches' witness statements, once redacted; however, the balance of the trial court's order, including the finding that the name of the student who was the victim of the conduct of one of the coaches was exempt from disclosure, was affirmed. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 11-MR-131; the Hon. Eric S. Pistorius, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |

| Counsel on Appeal | Donald M. Craven (argued) and Esther J. Seitz, both of Donald M. Craven, P.C., of Springfield, for appellants. |
| | |
| | J. William Roberts and Charles R. Schmadeke (argued), both of Hinshaw & Culbertson, LLP, of Springfield, for appellees. |
| | |
| Panel | JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion. |
| | Justices Pope and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    In March 2011, plaintiffs Bruce Rushton, a reporter, and the State Journal-Register, a newspaper (collectively, the Journal), filed a complaint in the Sangamon County circuit court against defendants, the University of Illinois-Springfield and its interim chancellor, Harry Berman (collectively, UIS), seeking enforcement of two Freedom of Information Act (FOIA) (5 ILCS 140/3 (West 2010)) requests for documents pertaining to the resignation of three UIS coaches. UIS produced some of the requested documents, but it denied the rest as exemptions under section 7 of FOIA. The parties filed cross-motions for summary judgment. The trial court granted UIS's motion for summary judgment in part, ordering UIS to produce some, but not all, of the requested documents.

¶ 2    The Journal appeals, asserting the trial court erred in finding a majority of UIS documents exempt under FOIA. Specifically, the Journal argues UIS failed to prove disclosure was exempt as (1) part of the predecisional and deliberative process (5 ILCS 140/7(1)(f) (West 2010)), (2) an unwarranted invasion of privacy (5 ILCS 140/7(1)(c) (West 2010)), and (3) prohibited by federal law (5 ILCS 140/7(1)(a) (West 2010)), namely, by the Family Educational Rights and Privacy Act (Educational Privacy Act) (20 U.S.C. § 1232g (2006)). We affirm in part and reverse in part.

¶ 3                                I. BACKGROUND

¶ 4    In January 2010, the Journal filed the following FOIA request with UIS:

"[a]ll records, documents, and correspondence, written and electronic, including but not limited to emails, letters, notes and reports concerning the conduct of Joe Fisher and Roy Gilmore during a trip to Florida in March, 2009 with the women's softball team. Furthermore, I request all records, documents, and correspondence, written and electronic, including but not limited to emails, letters, notes and reports concerning communications deemed inappropriate between any student(s) and Jay Davis."

¶ 5        In January 2011, the Journal filed a second FOIA request for "the names of individuals and/or entities that have received $200,000 in [UIS] funds since September 1, 2009."

¶ 6        Before disclosing any documents, UIS sought advice from the Attorney General's Public Access Counsel (Access Counsel). UIS received preapproval to assert the deliberative process exemption for a series of e-mails and the witness statements and later received preapproval to deny disclosure under the Educational Privacy Act. However, the Access Counsel did not preauthorize UIS to assert the personal privacy exemption, explaining UIS had not met its burden of proof regarding that exemption. The Journal sought further review from the Access Counsel, after which UIS disclosed several documents, including (1) a release and settlement agreement for one student (name redacted) reflecting a settlement of $200,000 due to a UIS coach's misconduct during a 2009 softball team trip, (2) a ledger reflecting payment of exactly $200,000 to a female and her attorney (both names redacted), and (3) an entirely redacted letter sent March 23, 2009, to Chancellor Richard Ringeisen and campus legal counsel Mark Henss entitled "Sexual Assault and Battery by UIS Softball Coach." UIS later provided a copy of the letter with fewer redactions, showing the letter was sent by the victim's attorney, who expressed concern UIS might try to "sweep this matter under the rug" and accused Roy Gilmore of assaulting members of the women's softball team in what he described as "not isolated abberant behavior."

¶ 7        During this time period, the Journal published numerous articles regarding the alleged misconduct of the UIS coaches, containing information such as (1) a UIS student entered into a $200,000 settlement agreement with UIS following allegations of sexual impropriety by a softball coach in 2009; (2) the student's attorney informed UIS of the softball coach's assault on the student; (3) the allegations prompted the resignations of two softball coaches, Roy Gilmore and Joe Fisher, at the request of UIS; (4) Roy Gilmore admitted he exercised "poor judgment" and made a "poor decision"; and (5) golf coach Jay Davis resigned for unknown reasons.

¶ 8        In March 2011, the Journal filed a complaint in the Sangamon County circuit court, seeking (1) disclosure of the documents requested pursuant to FOIA, (2) attorney fees, (3) court costs, and (4) civil penalties authorized by FOIA. UIS maintained the documents were exempt from disclosure under section 7 of FOIA.

¶ 9        In May 2011, the Journal filed a motion to compel UIS to provide the requested documents for an *in camera* review. The trial court imposed additional requirements that UIS provide an index of the documents with detailed descriptions and claimed exemptions for each document. The court then ordered the parties to file briefs regarding the application of any exemptions.

¶ 10        UIS's index, sorted by bates-stamped numbers (with preceding zeroes omitted), detailed the documents and their claimed exemptions as follows:

    (1) Bates Nos. 1-6: e-mail string with staff opinions and communications regarding "the incident"; exempt as predecisional materials.

    (2) Bates Nos. 7-19: UIS personnel documents describing employees' status, compensation, and accrued vacation and sick leave; exempt as unwarranted invasion of personal privacy.

(3) Bates Nos. 20-23: e-mail string with staff opinions and communications regarding "the incident"; exempt as predecisional materials.

(4) Bates Nos. 24-26: typed staff notes describing interviews with coaches regarding "the incident"; exempt as predecisional material, unwarranted invasion of personal privacy, and violation of the Educational Privacy Act.

(5) Bates Nos. 27-34: typed staff notes describing interviews with students; exempt as predecisional material, unwarranted invasion of personal privacy, and violation of the Educational Privacy Act.

(6) Bates Nos. 35-37: handwritten staff notes describing interviews with student's parent exempt as predecisional material, unwarranted invasion of personal privacy, and violation of the Educational Privacy Act.

(7) Bates No. 40: e-mail string reflecting communications between student and coach; exempt as predecisional material, unwarranted invasion of personal privacy, and violation of the Educational Privacy Act.

(8) Bates Nos. 41-50: handwritten notes describing UIS administrators' meeting regarding "the incident"; exempt as predecisional material, unwarranted invasion of personal privacy, and violation of the Educational Privacy Act.

(9) Bates Nos. 51-52: e-mail string of correspondence between a student and UIS administrator; exempt as unwarranted invasion of personal privacy and violation of the Educational Privacy Act.

(10) Bates Nos. 53-54: correspondence from student's parent to UIS president regarding the incident; exempt as unwarranted invasion of personal privacy and violation of the Educational Privacy Act.

(11) Bates No. 55: e-mail regarding internal communication with respect to a "personnel matter"; exempt as predecisional material, unwarranted invasion of personal privacy, violation of the Educational Privacy Act.

(12) Bates Nos. 56-57: correspondence between student's attorney and UIS (previously disclosed in part with redactions); exempt as predecisional material, unwarranted invasion of personal privacy, and violation of the Educational Privacy Act.

(13) Bates Nos. 58-59: release and settlement agreement (previously disclosed in its entirety except for victim's name), exempt as an unwarranted invasion of personal privacy and violation of the Educational Privacy Act.

(14) Bates Nos. 60-66: UIS communications regarding UIS's response to "the incident," exempt as an unwarranted invasion of personal privacy and violation of the Educational Privacy Act.

(15) Bates No. 67: ledger sheet reflecting $200,000 payment (previously disclosed in its entirety except for victim's name), exempt as an unwarranted invasion of personal privacy and violation of the Educational Privacy Act.

¶ 11    In July 2011, UIS and the Journal filed cross-motions for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2010)). UIS attached an affidavit to its motion from the victim's attorney, which will be discussed in its

entirety later in this opinion, asking the court not to subject the victim to any further embarrassment, noting the victim's right to privacy significantly outweighed the public prurient interests.

¶ 12    In September 2011, the trial court held a hearing on the cross-motions for summary judgment. During the hearing, the court mentioned the numerous articles published by the Journal, stating:

> "I don't know what more you can find that makes things any worse than they are. He did–they did a pretty good job beating up these two guys and [UIS]. I'm not sure what else out there there [*sic*] is other than the kind of nasty dirty stuff that allegedly took place, and I don't see a great deal of public interest in that as relates to the personal private interest of the girls that were involved."

The court also inquired about UIS allowing the coaches to resign rather than initiating termination proceedings. UIS responded by explaining the resignation of the coaches allowed UIS to quickly resolve the employment status of the coaches without a prolonged termination proceeding that could have resulted in the coaches retaining their positions. The court agreed UIS acted very quickly in securing the resignations of the coaches.

¶ 13    After hearing arguments, the trial court tabled its ruling in anticipation of the Seventh Circuit's interpretation of the Educational Privacy Act in a pending case. See *Chicago Tribune Co. v. University of Illinois Board of Trustees*, 781 F. Supp. 2d 672, 673 (N.D. Ill. 2011), *vacated sub nom. Chicago Tribune Co. v. Board of Trustees of the University of Illinois*, 680 F.3d 1001 (7th Cir. 2012). When the Seventh Circuit declined to reach the substantive issue regarding the applicability of the Educational Privacy Act, the trial court filed its order.

¶ 14    In issuing its order, the trial court found UIS had an obligation to comply with the Educational Privacy Act due to its receipt of federal funding, noting, "The court specifically finds that the records sought, but not produced, other than those hereinafter referenced, were appropriately either redacted or withheld entirely pursuant to [FOIA] and/or [the Educational Privacy Act]." The court thereafter ordered the disclosure of several documents: Bates Nos. 12, 14, 17, 20-21, and 60-66. UIS disclosed those documents as ordered.

¶ 15    This appeal followed.

¶ 16                              II. ANALYSIS

¶ 17    On appeal, the Journal asserts the trial court erred in finding a majority of UIS documents exempt under FOIA. Specifically, the Journal argues UIS failed to prove disclosure was exempt as (1) part of the predecisional and deliberative process (5 ILCS 140/7(1)(f) (West 2010)), (2) an unwarranted invasion of privacy (5 ILCS 140/7(1)(c) (West 2010)), and (3) prohibited by federal law (5 ILCS 140/7(1)(a) (West 2010)), namely, by the Educational Privacy Act (20 U.S.C. § 1232g (2006)). We address these arguments in turn.

¶ 18                         A. Standard of Review

¶ 19    In this case, the parties filed cross-motions for summary judgment, conceding that only

issues of law remained. Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). The trial court's ruling with regard to summary judgment is subject to *de novo* review. *Reppert v. Southern Illinois University*, 375 Ill. App. 3d 502, 504, 874 N.E.2d 905, 907 (2007). A reviewing court "may affirm a grant of summary judgment on any basis appearing in the record, regardless of whether the trial court relied upon that ground." *Perez v. Sunbelt Rentals, Inc.*, 2012 IL App (2d) 110382, ¶ 7, 968 N.E.2d 1082.

¶ 20                      B. The Purpose and Operation of FOIA

¶ 21        Before addressing the parties' arguments, we first outline the purpose of FOIA. It is "the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees." 5 ILCS 140/1 (West 2010). The purpose of FOIA is to "open governmental records to the light of public scrutiny." *Reppert*, 375 Ill. App. 3d at 505, 874 N.E.2d at 907. In furtherance of this policy, FOIA is to be liberally construed while exemptions are to be read narrowly. *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 416, 844 N.E.2d 1, 15 (2006). However, FOIA "is not intended to cause an unwarranted invasion of personal privacy." 5 ILCS 140/1 (West 2010). When a novel FOIA issue arises regarding the Illinois FOIA statute, Illinois courts often look to cases citing the federal FOIA statute (5 U.S.C. § 552 (2006)) for interpretation, due to the similarity of the statutes. *Harwood v. McDonough*, 344 Ill. App. 3d 242, 248, 799 N.E.2d 859, 864 (2003).

¶ 22        Pursuant to FOIA, the public body seeking to deny access to documents has the burden of showing, by clear and convincing evidence, the requested documents fall within one of the FOIA exemptions. 5 ILCS 140/1.2 (West 2010); see also *Harwood*, 344 Ill. App. 3d at 245-46, 799 N.E.2d at 862. Satisfying this burden requires the public body to provide a detailed explanation for asserting the exemptions in order for those reasons to be tested in an adversarial proceeding. *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 408, 680 N.E.2d 374, 377 (1997). The trial court shall conduct an *in camera* inspection of the files to determine whether the public body can sustain its burden of proof. 5 ILCS 140/11(f) (West 2010). Although the burden is on UIS, we recognize the Journal is put at a disadvantage as it argues in favor of disclosure since the Journal is unaware of the content of the documents it is requesting.

¶ 23        Having outlined the purpose and procedures of FOIA, we now turn to the documents at issue in this case.

¶ 24                   C. Whether the Deliberative Process Exemption
                         Applies to the Journal's FOIA Request

¶ 25        The Journal argues the trial court erred in finding several requested documents fell under the deliberative process exemption of FOIA (5 ILCS 140/7(1)(f) (West 2010)). The relevant

portion of that subsection exempts the following documents:

> "Preliminary drafts, notes, recommendations, memoranda and other records in which opinions are expressed, or policies or actions are formulated, except that a specific record or relevant portion of a record shall not be exempt when the record is publicly cited and identified by the head of the public body." 5 ILCS 140/7(1)(f) (West 2010).

¶ 26 The purpose of exempting predecisional and deliberative material is "to protect the communications process and encourage frank and open discussion among agency employees before a final decision is made." *Harwood*, 344 Ill. App. 3d at 248, 799 N.E.2d at 864. Otherwise, those who expect their remarks to be made public " 'may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process.' " *Enviro Tech International, Inc. v. United States Environmental Protection Agency*, 371 F.3d 370, 374 (7th Cir. 2004) (quoting *United States v. Nixon*, 418 U.S. 683, 705 (1974)).

¶ 27 Purely factual material must be disclosed once a final decision has been made, unless the factual material is inextricably intertwined with predecisional and deliberative discussions. *Watkins v. McCarthy*, 2012 IL App (1st) 100632, ¶ 36, 980 N.E.2d 733 (quoting *Enviro Tech International, Inc.*, 371 F.3d at 374-75). Factual information includes that which is collected within investigative reports, such as affidavits of witnesses and investigator's interviews, though personal information should be redacted. *Poss v. National Labor Relations Board*, 565 F.2d 654, 658 (10th Cir. 1977); see also *Watkins*, 2012 IL App (1st) 100632, ¶ 38, 980 N.E.2d 733. Communications after an agency has issued a decision are not exempt from disclosure. *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 151-52 (1975).

¶ 28 In this case, UIS classifies a majority of its documents as being part of the predecisional, deliberative process. The "e-mail strings" containing the staff opinions and general communications regarding the process of the investigation or the scheduling of meetings during the investigative process (Bates Nos. 1-6 and 22-23) are clearly protected within this exemption, as the administrators collected information in order to guide them in reaching a decision as to whether misconduct occurred and the type of remedy to provide for any proved misconduct. The content of the e-mail strings is precisely the type of communication *Harwood* refers to in permitting frank and open discussion with the administration. Nothing in those documents contains a factual accounting of events subject to disclosure under FOIA. The Journal asserts UIS did not provide adequate details to allow the Journal to test UIS's assertions in an adversarial proceeding, but we find the court exercised the appropriate remedy by granting the Journal's motion for an *in camera* inspection of the records.

¶ 29 Additionally, the redacted portions of the letter submitted to UIS from the victim's attorney (Bates Nos. 56-57) is exempt from disclosure as a predecisional document. The letter does contain a brief synopsis of what the victim contends occurred. However, the remaining undisclosed portion outlines the opinion of the victim and her attorney regarding how they wish to proceed with resolving the victim's potential legal claims against UIS. This information would have undoubtedly been relied upon by UIS in formulating a plan or policy for settling potential litigation with the victim. Moreover, for reasons discussed below with

regard to the witness statements, we find the redacted factual information contained within the letter to be of a highly personal nature and, therefore, exempt under section 7(1)(c).

¶ 30 Conversely, the documents containing witness statements (Bates Nos. 24-50) are not exempt from disclosure as predecisional and deliberative documents, despite UIS's reliance on the documents prior to making its decision and PAC's preauthorization for use of the exemption. These documents, which contain factual accountings of the events by witnesses, are capable of standing alone, with no evidence they are "inextricably intertwined" with the predecisional process. See *Watkins*, 2012 IL App (1st) 100632, ¶ 36, 980 N.E.2d 733. However, for reasons discussed below, we conclude these documents are subject to the personal privacy exemption. See 5 ILCS 140/7(1)(c) (West 2010).

¶ 31 The "internal communication re: personnel matter" document (Bates No. 55) is also not subject to exemption under section 7(1)(f). The communication reflects a final decision, so it clearly is not part of the predecisional, deliberative process. As discussed below with regard to documents within a personnel file, we additionally find this document is not subject to the personal privacy exemption under section 7(1)(c) because this type of communication was for the benefit of the administrators and, thus, would not receive the same exemption as those documents which are properly contained within a personnel file. Finally, as discussed later in this order, we further conclude this document is not exempt from disclosure pursuant to the Educational Privacy Act.

¶ 32 After review of the sealed documents, we conclude (1) the e-mails circulated in order to schedule and coordinate proceedings (Bates Nos. 1-6, 22-23) and (2) the undisclosed portion of the letter from the victim's attorney (Bates Nos. 56-57) are exempt under FOIA. However, the witness statements taken during the investigative process (Bates Nos. 24-50) are not subject to exemption under section 7(1)(f), but most portions are subject to the personal privacy exemption under section 7(1)(c), as explained below. Additionally, we conclude the internal communication regarding a "personnel matter" is not subject to exemption under section 7(1)(f), nor, as we discuss later in this opinion, subject to exemptions under section 7(1)(c) or section 7(1)(a) of FOIA. Accordingly, the "internal communication re: personnel matter" must be disclosed by UIS.

¶ 33 D. Whether the Personal Privacy Exemption
Applies to the Journal's FOIA Request

¶ 34 The Journal next asserts the trial court erred in finding the requested documents subject to the personal privacy exemption of FOIA (5 ILCS 140/7(1)(c) (West 2010)). The section exempts:

"Personal information contained within public records, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy, unless the disclosure is consented to in writing by the individual subjects of the information. 'Unwarranted invasion of personal privacy' means the disclosure of information that is highly personal or objectionable to a reasonable person and in which the subject's right to privacy outweighs any legitimate public interest in obtaining the information. The disclosure of information that bears on the public duties of public employees and officials shall not be

considered an invasion of personal privacy." 5 ILCS 140/7(1)(c) (West 2010).

¶ 35    A person has an "individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977). In particular, the United States Constitution provides individuals have the right to privacy in personal decisions of a sexual nature, such as marriage, procreation, and contraception. *People v. Beard*, 366 Ill. App. 3d 197, 204, 851 N.E.2d 141, 148 (2006). The Illinois Constitution extends this right with a broad, unrestrictive provision that recognizes a "zone of personal privacy." (Internal quotation marks omitted.) *Beard*, 366 Ill. App. 3d at 204, 851 N.E.2d at 148; Ill. Const. 1970, art. I, § 6; see also *Kunkel v. Walton*, 179 Ill. 2d 519, 537, 689 N.E.2d 1047, 1055 (1997).

¶ 36                    1. *Documents Contained Within the Coaches' Personnel Files*

¶ 37    The Journal contends UIS must disclose information from the personnel files of those coaches who allegedly committed misconduct (Bates Nos. 7-11, 13, 15-16, and 18-19). UIS disagrees, arguing those documents contained within personnel files are exempt under section 7(1)(c).

¶ 38    Though information contained within a personnel file is generally exempt from disclosure for personal privacy reasons, "information that bears on the public duties of public employees and officials" is not exempt under the personal privacy exemption. See *Gekas v. Williamson*, 393 Ill. App. 3d 573, 583, 912 N.E.2d 347, 356 (2009) (disclosing records of internal affairs investigation into sheriff's activities is not an invasion of privacy). To allow an exemption for every document a public body placed within a "personnel file" would allow a public body to subvert the purposes of FOIA. *Id.* Therefore, "the trial court must determine, through an *in camera* inspection of the file, whether the requested information is exempt as a clearly unwarranted invasion of personal privacy and whether the presence of exempt private information can be cured through redaction." *Stern v. Wheaton-Warrenville Community Unit School District 200*, 384 Ill. App. 3d 615, 622, 894 N.E.2d 818, 825 (2008), *aff'd in part & vacated in part*, 233 Ill. 2d 396, 910 N.E.2d 85 (2009).

¶ 39    The Journal relies on *Stern* to support its argument that documents contained within the personnel files of public employees are not exempt from disclosure. In *Stern*, a newspaper made a request for a school superintendent's contract while comparing superintendent salaries in other districts. *Stern*, 233 Ill. 2d at 400-01, 910 N.E.2d at 89. The supreme court held the contract was not exempt from disclosure under FOIA because the contract contained the duties of a public official. *Stern*, 233 Ill. 2d at 415, 910 N.E.2d at 97. However, the court noted any personal information, such as social security numbers and bank account numbers, should be redacted. *Stern*, 233 Ill. 2d at 414, 910 N.E.2d at 97.

¶ 40    Conversely, UIS cites to *Copley Press, Inc. v. Board of Education for Peoria School District No. 150*, 359 Ill. App. 3d 321, 325, 834 N.E.2d 558, 561-62 (2005), which held documents that were properly contained within a personnel file, such as performance evaluations and records of disciplinary actions, were *per se* exempt from disclosure.

¶ 41    In this case, the information sought by the Journal includes documents reflecting the coaches' compensation for accrued vacation and sick time, employee status, and other related documents. The Journal interprets *Stern* too broadly, inferring any document within a

personnel file can be subject to disclosure as bearing on the "public duties" of the employees. A closer reading of *Stern* shows the case was limited to the disclosure of employment contracts, as those contracts set forth the duties of public employees and the compensation paid from public funds. We find the present case more analogous to *Copley*. We fail to see how the coaches' election for the disbursement of accrued vacation, sick leave, and related documents have any bearing on their alleged misdeeds or public duties. Instead, we conclude this information is of a highly personal nature, contained appropriately in a personnel file, and exempt from disclosure.

¶ 42          2. *Witness Statements, Settlement Agreement, and Other Documents*

¶ 43          The Journal next asserts it is entitled to witness statements (Bates Nos. 24-39 and 41-50), the unredacted settlement agreement and ledger (Bates Nos. 58-59 and 67), and other documents for which UIS claims the personal privacy exemption under section 7(1)(c) (Bates Nos. 51-52, 53-54, and 40).

¶ 44          Courts are required to balance the individual's right to privacy with the public's legitimate interest in disclosure. See *Lieber v. Southern Illinois University*, 279 Ill. App. 3d 553, 561, 664 N.E.2d 1155, 1160 (1996), *aff'd sub nom. Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 680 N.E.2d 374 (1997). In weighing those interests, the court should consider "(1) the plaintiff's interest in disclosure; (2) the public interest in disclosure; (3) the degree of invasion of personal privacy; and (4) the availability of alternative means of obtaining the requested information." *Lieber*, 279 Ill. App. 3d at 561, 664 N.E.2d at 1160.

¶ 45                              a. Witness Statements

¶ 46          The Journal asserts it is entitled to witness statements generated during the investigation of alleged misconduct by UIS coaching staff (Bates Nos. 24-39, 41-50). UIS, in turn, argues these statements are exempt from disclosure under section 7(1)(c) as an unwarranted invasion of personal privacy.

¶ 47          Under the first prong of *Lieber*, the Journal argues its interest in disclosure is to inform the public of a violent crime and UIS's attempt to conceal the misconduct of its coaches. The Journal compares this instance to *Jane Doe-3 v. White*, 409 Ill. App. 3d 1087, 951 N.E.2d 216 (2011), in which the Bloomington-Normal school district failed to disclose a former teacher's resignation due to sexual abuse of students to the Champaign County school district, which later hired the same teacher. The court held that when the Bloomington-Normal school district took the affirmative step of writing falsified letters of recommendation on behalf of the teacher, it assumed a special duty of care that could lead to potential liability. *Jane Doe-3*, 409 Ill. App. 3d at 1100, 915 N.E.2d at 229. We find the Journal's reliance on *Jane Doe-3* unconvincing, as UIS *did* inform the public about sexual impropriety by one or more coaches and has not attempted to falsify the coaches' records in an attempt to hide any allegations. Moreover, *Jane Doe-3* was not a FOIA case; rather, it concerned the school district's civil liability under tort law, which is unpersuasive when applied to the case at bar.

¶ 48     UIS asserts the Journal's interest is economic in nature, as publishing the salacious content would serve to increase its newspaper sales and sensationalize the underlying misconduct. UIS asserts the Journal's interests have been satisfied because it has already published numerous articles regarding the coaches' misconduct, such as (1) softball coach Roy Gilmore resigned after allegedly sexually assaulting a softball player on a team trip to Florida in 2009; (2) the head coach of the softball team, Joe Fisher, resigned due to the allegations against Gilmore; (3) the student who made allegations against Gilmore received $200,000 in a settlement with UIS; (4) golf coach Jay Davis unexpectedly resigned in 2009; and (5) all coaches were asked to resign by UIS. We agree to an extent. While the Journal has minimal interest in the explicit details of events that occurred on the softball trip, it does have an interest in the events leading up to the misconduct.

¶ 49     In satisfying the second prong of *Lieber*, the Journal explains the public interest in disclosure is to know about sexual misconduct of UIS coaches and UIS's reaction to the misconduct in order to better protect the public and community, as shown in *Jane Doe-3*. UIS again asserts the public interest has been satisfied by the numerous articles previously published by the Journal regarding the incidents, which disclose acts of sexual impropriety by the coach.

¶ 50     In its argument in support of public disclosure, the Journal relies, in part, upon *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), to suggest the public interest in news regarding a violent crime, such as sexual assault, trumps the victim's interest in personal privacy. In *Florida Star*, the police department allowed unrestricted media access to police reports, then the media published the information contained within the police reports, including the victim's name, which was contrary to Florida law. *Florida Star*, 491 U.S. at 527. The Supreme Court concluded "that where a newspaper publishes truthful information which it has lawfully obtained, punishment may lawfully be imposed, if at all, only when narrowly tailored to a state interest of the highest order, and that no such interest is satisfactorily served by imposing liability" under the set of facts presented to the Court. *Florida Star*, 491 U.S. at 541. The Court reasoned the police department was in a better position to self-regulate the release of sensitive material rather than punishing a newspaper for printing material it obtained legally from the police. *Florida Star*, 491 U.S. at 538.

¶ 51     We find *Florida Star* unpersuasive and inapposite to the case at bar, as *Florida Star* represents an instance of a victim trying to undo the damage after the fact. In the present case, the damage to the victim's personal privacy can be prevented. However, the public does have a legitimate concern in the decisions of UIS or its coaches that led to the behaviors preceding the sexual misconduct (Bates Nos. 24-25). This information would be of legitimate interest to not only the general public, but to parents of students.

¶ 52     The Journal also explains the public has an interest in UIS's actions, particularly in allowing the coaches to resign rather than terminating them. No evidence supports a university-wide attempt to hide the general facts regarding the resignations of the coaches. As the UIS attorney explained, the coaches were allowed to resign in lieu of a prolonged administration process that could have resulted in the coaches retaining their positions. UIS's decision allowed for a very swift response.

¶ 53    Under the third prong of *Lieber*, UIS asserts the disclosure of the witness statements would greatly invade the personal privacy of the student witnesses and cause the victim to relive the traumatizing experience. As the victim's attorney stated in an affidavit to the court:

"The UIS student who was my client did not wish and does not wish to be subjected to public embarrassment nor to have the facts and circumstances related to this invasion of her most private, intimate, and personal safety made public. *** The only current public interest, given the passage of time, is a prurient and licentious interest which interest is significantly outweighed by my client's interest in her privacy. *** My client has a substantial and compelling interest in not having these matters which caused her emotional trauma to be brought back up and subjected to public scrutiny. My client was one of the victims and any disclosure would subject her to additional trauma."

¶ 54    The Journal contends redacting the records would be sufficient to protect the privacy interests of the witnesses and victims. However, given the few members of the softball and golf teams, disclosing any detailed information about the offenses would make the student more easily identifiable. Having said that, some information contained within the coaches' statements (Bates Nos. 24-25) could be redacted and disclosed without an unwarranted invasion of the students' personal privacy. Specifically, we refer to actions and observations made by the UIS softball coaches preceding the sexual misconduct.

¶ 55    At this stage, the undisclosed information consists of (1) the detailed accounting of the sexual misconduct and (2) the actions and behaviors of the coaches preceding the act of sexual misconduct. The Journal and the public know an act or acts of sexual misconduct by a softball coach led to the swift resignation of two UIS softball coaches, resulting in a $200,000 settlement paid to a student. As the trial court noted after reviewing the articles published by the Journal:

"I don't know what more you can find that makes things any worse than they are. He did–they did a pretty good job beating up these two guys and [UIS]. I'm not sure what else out there there is other than the kind of nasty dirty stuff that allegedly took place, and I don't see a great deal of public interest in that as relates to the personal private interest of the girls that were involved."

¶ 56    We agree with the trial court's assessment. The details of that sexual misconduct are highly personal, which weighs heavily in favor of exemption. The same cannot be said for the actions and behaviors of the coaches preceding the sexual misconduct, which does not affect the personal privacy rights of the students, but instead reflects on the decisions of UIS and its coaches.

¶ 57    To satisfy the fourth prong of *Lieber*, the Journal contends it had no practical alternative means by which to obtain the requested information. UIS notes the Journal had already received significant information from UIS, which the Journal published in its newspaper. Additionally, the Journal could easily obtain the rosters from the 2009 softball and golf teams and request interviews with the players. We agree with UIS. The Journal could easily obtain the names of female golf and softball players and coaches in 2009 and ask those individuals for interviews or other information.

¶ 58     Based on this particular set of facts, specifically the fact that the Journal has been able to publish numerous articles informing the public of (1) UIS's actions in asking the coaches to resign and (2) the general allegations against the coaches, we conclude the unwarranted invasion of privacy outweighs the public interest with regard to the majority of the witness statements. Therefore, we conclude the witness statements (Bates Nos. 26-39 and 41-50) are exempt from disclosure under section 7(1)(c) of FOIA. However, we also conclude the public interest outweighs personal privacy in redacted portions of the coaches' statements in Bates Nos. 24-25, which describe the events preceding the act of sexual misconduct. As explained later in this opinion, the Educational Privacy Act does not apply to these redacted portions of the coaches' statements, which means UIS must disclose the documents as redacted. Specifically, in Bates No. 24, UIS must disclose the first three paragraphs after redacting the names of the softball players mentioned in those paragraphs. The remaining paragraphs are not subject to disclosure. With regard to Bates No. 25, UIS must disclose the final paragraph after redacting the names of the softball players mentioned in that paragraph. The remaining paragraphs are not subject to disclosure.

¶ 59                          b. Settlement Agreement and Ledger

¶ 60     With respect to the settlement agreement and ledger reflecting the settlement payment, the only portion of those documents not previously disclosed by UIS is the name of the victim. The Journal contends it is in the public's interest to know how public university funds are spent and the recipient of those funds. See 5 ILCS 140/2.5 (West 2010). While we agree the public has a legitimate interest in the spending of a public university such as UIS, the public already knows UIS paid a student $200,000 to settle allegations of sexual impropriety by a coach during a 2009 softball team trip to Florida. The payment amount and details of the reasoning behind the settlement are sufficient to satisfy the legitimate interests of the public without disclosing the student's name. If the Journal questions whether UIS made the payment as required, it could contact the victim's lawyer, who is named in the ledger, to ensure UIS remitted payment to the victim in a timely fashion. There is no legitimate public interest in the name of the victim; thus, the victim's personal privacy interests far outweigh the interest of the public or of the Journal.

¶ 61     Moreover, at the trial court and again on appeal, the Journal insists it is not interested in the individual names of students, yet does not withdraw its request for the unredacted settlement agreement and ledger. As Rushton noted in his formal request for review under FOIA, when presented with the redacted settlement agreement: "I cannot fathom how a public body can withhold the identity of an individual or entity that received public funds." However, because the Journal persists in arguing it is uninterested in student names, its subsequent request for what amounts to the name of the victim is appropriately denied as an abandoned argument. See *Senior Housing, Inc. v. Nakawatase, Rutkowski, Wyns & Yi, Inc.*, 192 Ill. App. 3d 766, 770, 549 N.E.2d 604, 607 (1989) ("Generally, an appeal will be considered as abandoned where the appellant fails to prosecute the appeal or does some act inconsistent with its prosecution.").

¶ 62     We conclude the trial court did not err in finding the victim's name contained within the

settlement agreement and ledger (Bates Nos. 58-59 and 67) exempt from disclosure.

¶ 63                                   c. Other Documents

¶ 64        UIS also claims the personal privacy exemption with respect to various correspondence arising from but not directly related to the coaches' resignation. One of the pieces of correspondence is an e-mail string containing a student complaint and an administrator arranging a meeting with that student (Bates Nos. 51-52). The second is correspondence from the parent of an affected UIS student addressed to the UIS president (Bates Nos. 53-54). The third item is a private communication between an affected student and one of the coaches (Bates No. 40).

¶ 65        With respect to the two sets of e-mail correspondence, in balancing the *Lieber* factors, the Journal and public have an interest in the opinions of students and the parents of students with regard to the resignation of the coaches, especially if those individuals believe UIS is attempting to conceal information from the public. Conversely, the individuals who composed each correspondence have a privacy interest in being able to privately express their opinions and concerns to UIS. Parents and students should feel free to address the administration without fear their correspondence will be on the front page of the morning newspaper. If the student or parents wanted their concerns and opinions to be publicized, they could have easily contacted the media in order to express those opinions.

¶ 66        However, our inquiry cannot stop there. The question then becomes whether redaction of the correspondence, consistent with section 7(1) of FOIA, would remedy any personal privacy concerns. A closer inspection of the correspondence from the parent reveals redaction is not a potential remedy because the affected student could easily be identified through the context of the letter. After balancing the interests, under section 7(1)(c) of FOIA, we conclude the parent's letter to UIS (Bates No. 53-54) is exempt from disclosure. However, with regard to the correspondence to UIS from a student, we conclude redaction would adequately protect the privacy interests because nothing in the content of the e-mail, other than the student's name, identifies the student. Thus, the student's complaint (Bates No. 51-52) must be disclosed after redaction of any identifying information because the document is not exempt under section 7(1)(c) of FOIA or under the Educational Privacy Act, as further discussed below.

¶ 67        The third communication is directly related to one coach's resignation, which would undoubtedly be of public interest under the *Lieber* balancing test. We note the public is already aware the coach resigned due to inappropriate behavior but knows none of the details leading to that resignation. However, in this situation, given the highly personal nature of the communication and the method by which it came to UIS's attention, we find the public interest is outweighed by the unwarranted invasion of privacy of the student when balancing the *Lieber* factors.

¶ 68                          E. Whether the Educational Privacy Act
                           Prevents Disclosure of Records Under FOIA

¶ 69 Having concluded that all but three documents are exempt from disclosure under section 7(1)(c) or 7(1)(f) of FOIA, we now turn to the three remaining documents, which consist of (1) the "internal communication re: personnel matter" (Bates No. 55), (2) the e-mailed student complaint (Bates Nos. 51-52), and (3) coaches' witness statements (Bates Nos. 24-25) to determine whether the Educational Privacy Act requires exemption of those documents.

¶ 70 The purpose of the Educational Privacy Act is to "ensure access to educational records for students and parents and to protect the privacy of such records from the public at large." *Student Press Law Center v. Alexander*, 778 F. Supp. 1227, 1228 (D.D.C. 1991). Section 1232g(b)(1) of the Educational Privacy Act provides:

"No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information, as defined in paragraph (5) of subsection (a) of this section) of students without the written consent of their parents to any individual, agency, or organization ***." 20 U.S.C. § 1232g(b)(1) (2006).

The statute defines "education records" as records, files, documents, or other materials which (1) "contain information directly related to a student" and (2) "are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A) (2006).

¶ 71 A cursory examination of the "internal communication re: personnel matter" reveals it is not subject to the Educational Privacy Act because it is not a student education record, nor does its content reference, directly or indirectly, any information regarding a student. Further, this communication makes no reference to any underlying details of alleged misconduct. We would also note the majority of the content within this communication has already been disclosed to the Journal and the public. Therefore, we conclude the Educational Privacy Act does not apply to this "internal communication" (Bates No. 55).

¶ 72 Likewise, we conclude the student complaint (Bates No. 51-52), on its face, is not subject to the Educational Privacy Act. The complaint does not contain information directly related to a student; rather, it expresses the voluntarily expressed opinion of a student with no identifying characteristics once the student's name has been redacted.

¶ 73 Finally, a cursory examination of the nonredacted portions of the coaches' witness statements (Bates Nos. 24-25) reveals those statements are not subject to the Educational Privacy Act, as they reflect on the actions and behaviors of the coaches, not the students. None of the disclosed statements would directly relate to a student, as required for exemption under the Educational Privacy Act.

¶ 74 Accordingly, we conclude the Educational Privacy Act does not prevent the disclosure of (1) the "internal communication re: personnel matter" (Bates No. 55), (2) the student complaint (Bates Nos. 51-52), or (3) nonredacted portions of the coaches' witness statements (Bates Nos. 24-25). Because an examination of the documents convinces us these documents do not, on their face, fall within the parameters of the Educational Privacy Act, we need not address whether the Educational Privacy Act specifically prohibits the disclosure of education records in Illinois, as necessary to satisfy section 1(a) of FOIA.

¶ 75                             III. CONCLUSION

¶ 76        For the foregoing reasons, we conclude the trial court erred in denying the Journal's FOIA request for (1) the e-mail string containing a student complaint (Bates Nos. 51-52) once redacted, (2) the "internal communication re: personnel matter" (Bates No. 55), and (3) the coaches' witness statements (Bates Nos. 24-25), once redacted. The remainder of the court's order is affirmed.

¶ 77        Affirmed in part and reversed in part.